COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Willis


ALFRED F. HOWINGTON
                                        MEMORANDUM OPINION*
v.    Record No. 0971-03-4                   PER CURIAM
                                        AUGUST 26, 2003
IMAGE WORKS LANDSCAPE MANAGEMENT, LLC AND
 AMERICAN STATES INSURANCE COMPANY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Alfred F. Howington, pro se, on briefs).

            (Brooke Anne C. Hunter; Kalbaugh, Pfund &
            Messersmith, on brief), for appellees.


    Alfred F. Howington (claimant) contends the Workers'

Compensation Commission erred in finding that he (1) failed to

prove he sustained an injury by accident on any particular date,

arising out of and in the course of his employment; and

(2) failed to give timely notice of his injury within the

statutory thirty-day period.  Claimant also raises the question

of "[w]hether the lack of available records regarding prior

work-related injuries and the use by . . . employees of personal

insurance for those injuries unfairly prejudices the

claimant/appellant when the lack of notification defense is used

by the employer and the employer's personal memory serves as the

record thereby posing a conflict of interest."  Upon reviewing

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

the record and the parties' briefs, we conclude that this appeal is without merit. Accordingly, we summarily affirm the commission's decision. Rule 5A:27.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

"In order to carry [the] burden of proving an 'injury by accident,' a claimant must prove that the cause of [the] injury was an identifiable incident or sudden precipitating event and that it resulted in an obvious sudden mechanical or structural change in the body." Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

Claimant testified that on August 22, 2000, he injured his left knee when he fell down a ramp while removing equipment from the rear of employer's truck. Claimant felt immediate pain, but did not think his injury was serious. He stated that it was the "type injury where you bump your knee." He claimed there was one eyewitness to the incident, but that the eyewitness no longer worked for employer and he lived in New York.

From August 22, 2000 to September 4, 2000, claimant felt "[j]ust stiffness" in his left knee. He stated that he fell

- 2 -

again on the ramp on September 4, 2000, landing on both knees, resulting in a "dull pain" and "a throb." Claimant testified that he fell numerous times on the ramp before it was replaced on April 19, 2001. He estimated that he fell about ten times between August 22, 2000 and April 19, 2001. He also testified that while working on an unspecified date, he stepped into a ditch, his knee gave way, and he fell. That incident caused his knee to worsen. Claimant could not recall if he reported that incident to employer.

Claimant testified that the condition of his left knee got better after each fall, but then worsened again each time he fell. He admitted he continued to work full-duty after August 22, 2000, but that he had stiffness in his knee. He also admitted he did not seek medical treatment for his left knee until September 2001. He claimed he did not seek medical attention until September 2001 because he did not have medical insurance until August 2001.

Claimant testified that he reported the August 22, 2000 accident immediately over his two-way radio to Michael McCarron, his supervisor, and to another supervisor named "John." Claimant stated that he told McCarron he fell down the ramp and injured his knee, but that he could finish out the day. Claimant testified that McCarron told him to use his personal insurance to obtain treatment. Claimant also stated that he mentioned his other accidents to his supervisors.

- 3 -

McCarron, employer's owner, testified that he spoke with claimant on a daily basis in August 2000. However, he had no knowledge that claimant was alleging an August 22, 2000 accident until he was served with documentation from the commission after claimant filed his Claim for Benefits on September 24, 2001. McCarron denied having any conversations with claimant before September 24, 2001, related to him sustaining a knee injury at work in August 2000. McCarron denied requiring employees to use their personal insurance for work accidents. McCarron confirmed that claimant continued to work his regular schedule between August 2000 and the date of the hearing. McCarron denied that claimant ever complained to him of any knee problems since August 2000. McCarron denied having any conversations with claimant after August 22, 2000, regarding the condition of the ramp or regarding other employees falling on the ramp. According to McCarron, employer replaced the ramp at the end of March 2001.

On September 17, 2001, Dr. Nassar Tahmassebi examined claimant. Claimant reported left knee pain of a nine-month duration. Dr. Tahmassebi reported as follows: "Had fall over the L knee at work." In a March 19, 2002 Attending Physician's Report, Dr. Tahmassebi indicated that claimant "slipped on ramp attached to rear of work vehicle" on August 22, 2000, but that his left knee pain had only been going on for nine months. Dr. Tahmassebi diagnosed a contusion of the left knee.

- 4 -

Dr. Tahmassebi referred claimant to Dr. Edward Alexander, an orthopedist.

Dr. Alexander, who first examined claimant on November 20, 2001, recorded a history of claimant twisting his knee in a trailer while working on a truck unloading equipment "approximately a year-and-a-quarter ago." Dr. Alexander recommended that claimant undergo an MRI. The MRI showed no evidence of meniscal or ligamentous tears, though it did show a small cyst. Dr. Alexander did not believe the cyst was of any significance, but ordered a bone scan. The bone scan showed normal activity in the left distal femur, and Dr. Alexander opined that the cyst was not related to claimant's injury. The bone scan also showed degenerative changes over the medial compartment of the left knee, which Dr. Alexander believed were related to the August 22, 2000 incident. Dr. Alexander recommended a course of mild anti-inflammatory medications.

In affirming the deputy commissioner's decision denying claimant's claim for benefits, the commission found as follows:

> [W]e find that the claimant failed to prove
> that he suffered an injury to his left knee
> as the result of a particular "accident."
> The claimant, himself, acknowledges that he
> fell and injured his knee on numerous
> occasions from August 22, 2000, through
> April 19, 2001, and it is unclear from the
> medical records whether the claimant ever
> mentioned these additional falls to his
> physicians. Furthermore, the claimant did
> not seek medical attention for his knee
> until September 17, 2001, more than a year
> after the date that he supposedly first fell

- 5 -

on the ramp. Under the circumstances, we agree with the Deputy Commissioner's conclusion that the claimant failed to prove, by a preponderance of the evidence, that he suffered an injury by accident, on any particular date, arising out of and in the course of his employment.

Claimant was required to prove by a preponderance of the evidence that he sustained "'an "identifiable incident that occur[red] at some reasonably definite time," which . . . cause[d] . . . "an obvious sudden mechanical or structural change in the body."'" Seven-Up Bottling Co. v. Moseley, 230 Va. 245, 247, 335 S.E.2d 272, 274 (1985) (citations omitted). In light of McCarron's testimony denying that claimant ever reported an August 22, 2000 accident; claimant's admission that he only felt as if he bumped his knee on August 22, 2000; his acknowledgment that he fell on numerous unidentified occasions between August 22, 2000 and April 19, 2001; the approximately one-year delay in his seeking medical treatment; his failure to mention his alleged other falls to his physicians; and Dr. Tahmassebi's initial notation of a fall nine months before September 17, 2001, the commission, as fact finder, could reasonably conclude that claimant failed to prove he sustained an identifiable incident occurring at some reasonably definite time, which resulted in an obvious sudden mechanical or structural change in his body.

Based upon this record, we cannot find as a matter of law that claimant's evidence was sufficient to sustain his burden of

- 6 -

proof.  Accordingly, the commission's findings are binding and conclusive upon us.

The sole issue addressed by the commission in its decision was whether claimant proved he sustained an injury by accident arising out of and in the course of his employment.  Our decision on that issue is dispositive of this appeal.  Therefore, we decline to address the remaining questions raised by claimant.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>